IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:18-cv-00607 |
| | ) | |
| 1.30 ACRES OF LAND, OWNED BY | ) | By: Elizabeth K. Dillon |
| JOHN GARRETT BAKER AND | ) | United States District Judge |
| SUZANNE JANE BAKER, | ) | |
| | ) | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mountain Valley Pipeline (MVP) is constructing an interstate natural gas pipeline. It commenced a condemnation action under the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, to acquire a permanent easement and temporary easements on numerous properties, including this property located in Montgomery County, Virginia, and owned by John and Suzanne Baker (collectively, Landowners). On March 8, 2018, the court entered an order in the primary condemnation case, *Mountain Valley Pipeline LLC v. Easements to Construct*, 7:17-cv-492 (W.D. Va.) (Dkt. No. 716), granting MVP immediate possession of the easements on this property. A trial on just compensation for the takings on the subject property is scheduled to begin on September 23, 2019.

MVP moves to exclude from the upcoming trial certain testimony of Steven Noble, Landowners' expert on just compensation, and testimony by one of the Landowners, John Baker, on the value of his property. MVP also filed an omnibus motion in limine to exclude: (1) claims that the pipeline is dangerous or unsafe; (2) evidence of other pipeline accidents or incidents; (3) evidence of appraisals of other properties; (4) evidence of settlement offers and communications;

(5) evidence of amounts paid for easements on other properties; (6) evidence of alleged damages from construction or operation; and (7) subdivision plats, plans, and studies.

Landowners move to exclude certain testimony and evidence by MVP's real estate appraisal experts Samuel B. Long and Jared L. Schweitzer. Landowners' omnibus motion in limine seeks to exclude: (1) evidence of statistical probability of a rupture; (2) photographic evidence of reclamation efforts by MVP on other parcels; (3) evidence of impact studies proffered by MVP not included or referenced in the reports of its experts; (4) evidence of the impact or non-impact of gas distribution pipelines on other properties; (5) evidence of the prior purchase price of the subject parcels; (6) evidence of the tax-assessed value of the property; and (7) evidence associated with "Market Perception as Reported by Participants/Local Participants" referenced in the Miller Long Appraisal Report.

These matters have been fully briefed and were argued at a hearing. During the hearing, the parties stated that they reached an agreement regarding MVP's introduction of impact studies, MVP conceded that it would not be introducing evidence of tax assessed value and market perception, and Landowners withdrew their challenge to prior-purchase-price evidence. Therefore, the portions of Landowners' motions in limine related to these topics will be dismissed as moot. The parties also stated that they reached agreements on the introduction of settlement offers and amounts paid for easements on other properties, so the court will dismiss those portions of MVP's motion as moot. Various additional concessions and withdrawals occurred at the hearing, mentioned as necessary herein.

For the reasons set forth below, the court will deny Landowners' motions in limine and to exclude the testimony of Long and Schweitzer. The court will also grant in part and deny in part MVP's motion to exclude Noble's testimony, grant MVP's motion to exclude Baker's testimony

to the extent the motion seeks to exclude expert testimony, and grant in part and deny in part MVP's motion in limine. Of course, the court may revisit these rulings at trial, depending on the evidence elicited and the context in which the evidence is offered.

I. DISCUSSION

**A. Legal Standard**

The motions present various issues of just compensation in eminent domain cases as well as issues involving the qualification of experts and their reliability and relevance. Legal standards regarding the same are set forth herein.

**1. Just compensation for partial permanent takings, including severance damages**

The Takings Clause of the Fifth Amendment prohibits the taking of private property without just compensation. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536 (2005). When the government condemns private property for a public purpose, it must pay just compensation for that property. Just compensation is the monetary equivalent of the property taken, and the federal courts have employed the concept of "fair market value" to determine the condemnee's loss. *United States v. 564.54 Acres of Land*, 441 U.S. 506, 510–11 (1979); *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 473–74 (1973).

Unless otherwise proscribed by Congress, federal law governs "questions of substantive right, such as the measure of compensation" for federal courts in condemnation proceedings. *United States v. Miller*, 317 U.S. 369, 379–80 (1942). *See also Tenn. Gas Pipeline Co. v. Permanent Easement for 1.7320 Acres*, No. 3:cv-11-028, 2014 WL 690700 (M.D. Pa. Feb. 24, 2014) (unpublished) (concluding that federal law applies in determinations of just compensation under the Natural Gas Act). The Fourth Circuit defines just compensation in a case of partial taking as "the value of the land taken plus the depreciation in the market value of the

remainder." *United States v. 97.19 Acres of Land*, 582 F.2d 878, 881 (4th Cir. 1978) (citing *W. Va. Pulp & Paper Co. v. United States*, 200 F.2d 100, 104 (4th Cir. 1952)). Moreover, "value [of the condemned land] is to be ascertained as of the date of taking." *Miller*, 317 U.S. at 374.

In *West Virginia Pulp and Paper*, the Fourth Circuit recognized the well-settled principle that "whenever there has been an actual physical taking of a part of a distinct tract of land, the compensation to be awarded includes not only the market value of that part of the tract appropriated, but the damage to the remainder resulting from that taking, embracing, of course, injury due to the use to which the part appropriated is to be devoted." 200 F.2d at 102. The court recognized that the landowner was damaged not only by the loss of the land, but also by the proposed use that caused depreciation to the remainder, and therefore was entitled to be awarded a sum that "would put it in as good position pecuniarily as it would have been if its property had not been taken." *Id.* at 103. The measure of this sum was "the value of the land taken plus the depreciation in the market value of the remainder due to the use made of the part taken." *Id.* at 104. *See also 97.19 Acres of Land*, 582 F.2d at 881 (citations omitted) (explaining that severance damages to the remainder, if any, are measured as "the difference in market value of the residue before and after the taking").

**2. Damages for perceived market negative influences**

In a previous opinion, this court analyzed the law with regard to testimony about damages resulting from perceived market negative influences, such as the perceived danger, or unsafe nature, of pipelines. *See Mountain Valley Pipeline, LLC v. 1.23 Acres of Land Owned by Eagle's Nest Ministries, Inc.*, Civil Action No. 7:18-cv-00610 (W.D. Va.), Dkt. No. 55; *Mountain Valley Pipeline, Inc. v. 6.50 Acres of Land Owned by Sizemore Inc. of Va.*, Civil Action No. 7:18-cv-00612 (W.D. Va.), Dkt. No. 66. The court will not repeat that entire analysis

4

here, but merely incorporates it by reference. By way of summary, the court held that, to be admissible, an expert's opinions with regard to some hazard incident to the use of the property taken must be supported by some evidence that the hazards are reasonably probable and more than just speculative. Moreover, there must be a nexus between those hazards and/or the public perception in the marketplace—specifically, the marketplace for that property—and a diminution in value of the property. In other words, there must be a causal link between the hazard inherent in the taking and a direct loss in the marketplace. *United States v. 760.807 Acres of Land*, 731 F.2d 1443, 1448 (9th Cir. 1984); *see also Atl. Coast Pipeline LLC v. 0.07 Acres*, No. 3:18-cv-00006, 2019 WL 2527571, at *14–17 (W.D. Va. June 19, 2019) (excluding an expert environmental professional's opinion about a natural gas pipeline's effect on property value because the analysis was not linked to the specific property's value and was therefore irrelevant to the determination of just compensation).

### 3. Expert testimony

Federal Rule of Evidence 702 and the standards established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), govern admissibility of expert testimony. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Before considering whether a proffered expert's testimony is reliable, the court first determines whether the witness qualifies as an expert. A witness may qualify as an expert on the basis of "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The expertise must relate to the areas in which the expert is expressing opinions. *See Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 800 (4th Cir. 1989). Exclusion should occur only where all bases for expertise are lacking with regard to the issue for which the opinion is offered, and a proffered expert "need not be precisely informed about all details of the issues raised in order to offer an opinion." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (quoting *Thomas J. Kline, Inc.*, 878 F.2d at 799).

While the test for exclusion may be a "strict one," *Kopf*, 993 F.2d at 377, some type of relevant expertise is nonetheless required. For example, where experience is one of the bases for a witness's expertise, the witness must "explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *Radiance Found., Inc. v. Nat'l Ass'n for the Advancement of Colored People*, 27 F. Supp. 3d 671, 674 (E.D. Va. 2013) (alteration in original) (citations omitted). Additionally, a witness's expertise must be tailored, to some degree, to the specific opinions offered and the particular facts in the case; general expertise or knowledge on a broad topic or general field may be insufficient, depending on the facts of a case. *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391–92 (D. Md. 2001) ("The fact that a proposed witness is an expert in one area, does not *ipso facto* qualify him to testify as an expert in all related areas.") (citing *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 247 (4th Cir. 1999)).

After ensuring that an individual qualifies as an expert, this court has an obligation under *Daubert* to act as a gatekeeper and ensure that any testimony concerning scientific, technical, or

6

other specialized knowledge offered in support of a party's claim is "not only relevant, but reliable." 509 U.S. at 589; *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting same). The proponent of the testimony must establish its admissibility, although it need not prove its expert's theory is correct. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001); *Md. Cas. Co. v. Therm–O–Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998). First, the trial court must ask whether proffered scientific evidence is valid and reliable. *United States v. Barnette*, 211 F.3d 803, 815 (4th Cir. 2000). Second, the court asks whether the evidence will help the trier of fact, which is generally a question of relevance, or "fit." The court must ask if, assuming the evidence is reliable, it will "assist the trier of fact to understand or determine a fact in issue." *Md. Cas. Co.*, 137 F.3d at 783 (quoting *Daubert*, 509 U.S. at 592).

The court's role in limiting expert testimony is important: "due to the difficulty of evaluating their testimony, expert witnesses have the potential to be both powerful and quite misleading." *Cooper*, 259 F.3d at 199 (citations omitted). Indeed, "given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). Importantly, "[t]he gatekeeping role of the district court is particularly pronounced in condemnation proceedings under Rule 71.1." *United States v. 33.92356 Acres Of Land*, 585 F.3d 1, 8 (1st Cir. 2009).

**B. MVP's Motion to Exclude Testimony by Steven Noble**

MVP moves to exclude the testimony of Noble, a real estate appraiser. (Noble Report, Dkt. No. 19.) MVP challenges his opinions under Federal Rule of Evidence 702 and the standards established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

7

**1. Proposed subdivisions**

Fair market value is determined by considering the property's "highest and best use," which is the "highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future." *Olson v. United States*, 292 U.S. 246, 255 (1934); *see also United States v. 1.604 Acres of Land*, 844 F. Supp. 2d 668, 679 (E.D. Va. 2011). "In order for a landowner to claim just compensation based on a proposed use, there must be evidence that the use is reasonably probable within the reasonably near future—and hence, not a speculative use." *1.604 Acres of Land*, 844 F. Supp. 2d at 679 (citing *Olson*, 292 U.S. at 255–57). To determine the highest and best use, the appraiser must analyze whether the use is (1) physically possible, (2) legally permissible, (3) financially feasible, and (4) maximally productive. *Id.*

MVP argues that Noble's discussion of possible subdivisions should be excluded because Landowners have no credible evidence of market demand for such a subdivision. Noble utilized evidence from public records, data from Loopnet.com and yesvirginia.com, and comparisons of sales in Montgomery County and Roanoke County, Virginia. (Noble Report 9–11, 25–34 of 86, Dkt. No. 31-1.) Noble also noted the subject property's proximity to the Virginia Tech campus in Blacksburg, increasing the demand for nearby housing. (*Id.* at 21.) Noble's conclusion that the highest and best use of the subject property is as a residential subdivision is sufficiently supported by facts and data.[1]

However, MVP also argues that Noble should not be permitted to testify about possible

---

[1] MVP's appraisers also believe that the highest and best use is as a residential subdivision, and at the hearing, MVP agreed that this is the highest and best use.

prices for individual lots because the property has not actually been subdivided. Under the "lot method" or "subdivision approach," an undivided tract of land is valued based upon how it might be subdivided and sold in the future as smaller parcels. *United States v. 6.09 Acres of Land*, 140 F. Supp. 3d 1218, 1247 (N.D. Ala. 2015). Federal courts "have often been reluctant to allow the lot method to be used to establish market value where the land has not actually been subdivided, and there has been little or no material preparation or development, rendering projections on subdivision and future sales more speculative, and sufficient sales of comparable undeveloped land exist." *Id.* at 1250 (collecting cases). Landowners argue that they have made progress towards residential subdivision development by hiring an engineer/surveyor for plat design and recording, obtaining appraisals of front acreage from an appraiser, building a private road to access the interior, applying for commercial electric utility installation, and obtaining a VDOT permit for a private road entrance. This is not enough to take the subject property out of the realm of "pure raw land." *See id.* at 1252–53 (excluding expert testimony using the lot method where landowners "proceeded with some preliminary planning that resulted in a number of proposed layouts, analyses, and projections, and they entered into a sewer service agreement," but "all that exists is a 'paper subdivision'"); *Guardian Pipeline, LLC v. 295.49 Acres of Land*, No. 08-C-28, 2009 WL 3335066, at *1 (E.D. Wis. Oct. 14, 2009) ("In most cases . . . the courts have adopted the approach that raw land as such, with little or no improvements or preparation for subdivision, may not be valued as if the land were in fact a subdivision.").[2]

Finally, MVP argues that Noble should not be permitted to testify about subdivision

---

[2] Landowners assert that Noble did not use the "lot method," but Noble's report does mention "potential gross revenues . . . in order of $745,000." (Noble Report 23 of 86.) At the hearing, Landowners' counsel clarified that potential gross revenues are not included in Noble's market analysis based on comparable sales.

maps, plans, or studies that did not exist when this case was filed. Courts "generally do not permit juries to consider plats that are prepared after the date of taking." *United States v. 1.50 Acres of Land*, 343 F. Supp. 3d 1321, 1351 (N.D. Ga. 2018) (citing *United States v. 633.07 Acres of Land*, 362 F. Supp. 451, 453–54 (M.D. Pa. 1973)). Landowners argue that these items should be admitted because they show that the property can support residential development, but that fact does not appear to be in dispute. Even if Landowners' subdivision plans could be considered relevant, they should be excluded because of the risk of unfair prejudice. *See 633.07 Acres*, 362 F. Supp. at 453 ("With such a subdivision plan in front of them upon which a number of building lots have been drawn to perfection each of which could have theoretically been sold at a profit to the landowner, it would be very easy for the jury to improperly attempt to determine the number of lots the land would produce and estimate a price for each lot in determining the fair market value of the entire tract.").

For these reasons, Noble will be permitted to offer his opinion regarding highest and best use, but testimony pursuant to the "lot method" will be excluded. Also, Noble will not be permitted to testify about subdivision maps, plans, or studies not in existence when this case was filed.

**2. High consequence areas (HCAs), pipeline accidents, alleged fear or stigma**

In response to this motion, Landowners do not contend that Noble should be allowed to testify about pipeline accidents or alleged fear or stigma. Instead, Landowners argue that Noble should be allowed to testify about high consequence areas (HCAs) and the potential impact radius (PIR) of an explosion area in the event of a pipeline rupture.[3]

---

[3] The parties agree that the subject property is not located within an HCA. Landowners still posit that the formula can still be used with respect to PIR.

In his report, Noble does not provide or cite to any evidence that any hazard is reasonably probable and there is no causal link between any hazard, or perception thereof, and a diminution in value of the property. *See Eagles Nest*, Dkt. No. 55. While proximity of a building to the pipeline may certainly be a factor reasonably considered by an appraiser in valuing property, and Noble's report properly considers that factor, Noble's report goes beyond proximity and opines regarding explosion areas and value in only conclusory language. There is no showing of risk, other than speculation, or of perception of risk in the marketplace for this property. Moreover, there is no connection made between an explosion area and a diminution in value. Indeed, it appears that the report is devoid of any facts or data with regard to risks of explosion, or explosion areas, and value. For these reasons, Noble will not be permitted to testify regarding the same.

### 3. Paired sales

In a paired sales analysis, "the appraiser identifies pairs of sales that are as similar as possible for all but one factor. When the sales are compared, the difference in price is best explained by that particular feature that distinguishes the properties." *McCann Holdings, Ltd. v. United States*, 111 Fed. Cl. 608, 626 (2013). "The goal of a paired sales analysis is to isolate the effect that a certain feature, such as a natural gas pipeline, has on a property's market value." *Sabal Trail Transmission, LLC v. 0.589 Acres of Land*, Case No.: 3:16-cv-277-J-34JBT, 2018 WL 3655556, at *4 n.3 (M.D. Fla. Aug. 2, 2018).

MVP moves to exclude evidence of paired sales involving conditions other than pipelines, such as high voltage transmission lines or railroads. Paired sales of properties with and without a pipeline easement may be more persuasive than other types of paired sales, but courts have held that this type of challenge goes to the weight of the evidence, not its

11

admissibility. *See Atl. Coast Pipeline, LLC v. 0.07 Acre, More or Less, in Nelson Cnty., Va.*, --- F. Supp. 3d ----, 2019 WL 2527571, at *15 (W.D. Va. June 19, 2019) ("To the extent ACP is challenging whether the property sales are truly comparable, doing so is insufficient to state a true *Daubert* challenge.") (citing *Columbia Gas Transmission, LLC v. 76 Acres, More or Less, in Balt. & Hartford Cntys., Md.*, 701 F. App'x 221, 229–30 (4th Cir. 2017) (unpublished); *E. Tenn. Nat. Gas Co. v. 7.74 Acres in Wythe Cnty., Va.*, 228 F. App'x 323 (4th Cir. 2007) (unpublished)); *Sabal Trail Transmission LLC v. +/- 1.823 Acres of Land*, No. 3:16-cv-267-J-32MCR, 2018 WL 2426364, at *3 (M.D. Fla. May 30, 2018) ("[T]he degree of comparability of sales goes to the weight of the evidence, not its admissibility."). The court finds that Noble's paired sales analysis should not be excluded. *See Sabal Trail*, 2018 WL 2426364, at *3 ("The court does not find the level of comparability of the paired sales (or alleged lack thereof) to be a basis for excluding Ray's opinion. When the sales of other properties are used as the basis for an expert's testimony, the requirement of showing similarity between the properties is less rigorous than when non-expert evidence of property sales is offered as substantive proof of value.") (citing *United States v. 0.161 Acres of Land*, 837 F.2d 1036, 1040 (11th Cir. 1988)).

### 4. Utility corridors

In their response to MVP's motion, Landowners do not contend that Noble should be allowed to testify about utility corridors, and counsel conceded the speculative nature of the testimony at the hearing. Therefore, MVP's motion will be granted with respect to utility corridors.

## C. MVP's Motion to Exclude Testimony of Landowner John Garrett Baker

MVP argues that the testimony of Landowner John Garrett Baker should be excluded because he was untimely disclosed as an expert witness. *See* Fed. R. Civ. P. 26(a)(2), 26(e).

Baker was not identified as an expert in Landowners' Rule 26(a)(2) disclosures, and in response to an interrogatory asking Landowners to state the value of the property before and after the take, Landowners responded that the value would be determined by experts. At his deposition on June 20, 2019, MVP asked Baker if he planned to testify on value, and Baker stated that he did not. Then, on July 2, 2019, the last day of discovery, Landowners supplemented their expert disclosures to include a report by Baker and supplemented their interrogatory answers to identify Baker as a witness on value.

If a party fails to timely supplement an expert disclosure or interrogatory response, the party "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). District courts have "broad discretion" in determining whether a party's "untimely disclosure of evidence is substantially justified or harmless." *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017). Courts consider the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence. *So. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).

In June, Baker indicated at his deposition that he would not be testifying as to value. His sudden reversal, weeks later, was a surprise to MVP. Landowners argue that MVP should not have been surprised, but Baker clearly testified "No, I'm not going to testify to the value. I've hired professionals to do that. I can provide cost analyses and other experience and work that I did on the property prior to the taking, though." (Baker Dep. 72 of 159, Dkt. No. 21-5.) MVP is also prejudiced by the late disclosure because MVP did not depose Baker on his valuation

13

opinions. Landowners' offer to make Baker available for another deposition does not entirely cure the prejudice because MVP will not have the opportunity to develop or provide rebuttal opinions and evidence. Moreover, as Baker himself stated, he hired experts to value his property. Finally, Baker's explanation—a newfound desire to testify as to value—is not a sufficient justification for the late disclosure. For these reasons, the court finds that the untimely disclosure of Baker's opinions on value was not harmless or substantially justified.

Even if the untimely disclosure was excusable, the court still would exclude Baker's opinions so far as they are inadmissible expert opinions. As this court recently explained in *Eagle's Nest* and *Sizemore*, a landowner is qualified to offer an opinion as to value "without further qualification," *see United States v. 329.73 Acres of Land*, 666 F.2d 281, 284 (5th Cir. 1982), but qualification is a separate issue from the admissibility of the proposed opinions. *See Eagle's Nest*, Dkt. No. 56.

MVP argues that Baker's testimony on value should be excluded because his report values the property as if it were subdivided into three to six "frontage" lots and one "interior" lot of 57 acres. (Baker Report 11, 13–14 of 116, Dkt. No. 21-6.) As stated above, it is improper to value property as if it were subdivided when it has not been subdivided and there has been little to no preparation for subdivision. *See United States v. 15.66 Acres of Land*, 315 F. Supp. 3d 1353, 1372–73 (N.D. Ga. 2018) ("[T]o the extent that Defendant is seeking to testify concerning valuation of the subject property under the lot method or based on the plans to develop a subdivision, that testimony is speculative and is inadmissible for the same reasons set forth supra."); *6.09 Acres*, 140 F. Supp. 3d at 1247–55 (excluding landowner testimony as to hypothetical lots).

MVP also argues that Baker's opinions are based on technical or specialized knowledge,

rather than commonly understood considerations. *See Eagle's Nest*, Dkt. No. 56 at 16–17 (explaining that courts have "rejected" owner attempts to "give testimony based on the technical or specialized knowledge of an appraisal expert" and not "the owner's familiarity with his own land") (collecting cases). Here, Baker states that he based his opinions on "over 13 evaluation reports" from "four different certified Appraisers" and "sales comparison data in reports by Randi Lemon, Steve Noble, and Dan Myers." (Baker Report 13, 15 of 116.) In bold lettering, Baker writes: "In all reports and appraisals for the property, a consistent pattern is evident. The land on the frontage acres is more valuable than the land on the interior acres." (*Id.* at 13.) He calculates "Frontage Acres Remainder Damage" based on the Lemon, Noble, and Bankhead/Schweitzer evaluations. (*Id.* at 14.) Thus, it appears that Baker is using the technical or specialized knowledge of appraisers, and his opinions on value will be excluded on that additional basis.

That being said, the court reiterates the general rule that a landowner, such as Baker, may offer his *lay* testimony as to value, provided that the opinion is "grounded, at least in part, on some basis that is not wholly speculative or completely irrelevant." *See Eagle's Nest*, Dkt. No. 56 at 9–10. Landowners' tardy disclosure of Baker as an *expert* witness does not impact Baker's right to offer lay opinion testimony based on his personal knowledge of the land, so long as such evidence was disclosed in discovery or no discovery required disclosure.

## D. MVP's Omnibus Motion in Limine

MVP moves to exclude claims that the pipeline is dangerous or unsafe, evidence of other pipeline accidents or incidents, and evidence of subdivision plats, plans, and studies for subdivisions that did not exist when this case was filed. For the same reasons stated in the court's discussion of Noble's expert opinion, these motions will be granted.

MVP also moves to exclude evidence of settlement offers and communications and evidence of amounts paid for easements on other properties. As noted above, Landowners agreed not to introduce such evidence, so these parts of MVP's motion will be denied as moot.

MVP moves to exclude evidence of appraisals of other properties. Landowners assert that they should be permitted to introduce prior appraisals by Samuel Long, Jared Schweitzer, or other Miller, Long & Associates appraisers that were performed on other properties on cross-examination of Long and Schweitzer for impeachment purposes. At the hearing, counsel for MVP agreed that prior appraisals could be used for impeachment.

Landowners also argue that they should be allowed to introduce a prior appraisal dated February 13, 2018, by Miller Long appraisers Schweitzer and R. Todd Bankhead. This is an appraisal of a three-acre portion of their property, but the tract no longer exists because Landowners voided the plat for it. (Dkt. No. 20-4 at 57–60 of 87.) Under the larger parcel rule, an appraisal for a smaller portion of the overall property is not relevant to the just compensation analysis. *See 0.07 Acre,* 2019 WL 2527571, at *13 (explaining that in "condemnation, the larger parcel is the tract or tracts of land which are under the beneficial control of a single individual or entity and have the same, or an integrated, highest and best use"); *W. Va. Pulp*, 200 F.2d at 104 ("If . . . several contiguous lots or tracts in reality constitute an entire parcel used for one general purpose by the common owner, the inquiry should embrace all injuries which will be caused to the entire body of land."). Therefore, the prior appraisal on the three-acre parcel will be excluded.

Finally, MVP moves to exclude evidence of alleged damages from construction or operation. Instead, compensable loss is limited to risks that are inherent in the easement. *See, e.g., Tex. E. Transmission, L.P. v. Permanent Easement of 0.5 Acres*, No. 1:14-cv-354, 2019 WL

1437871, at *3 (M.D. Pa. Apr. 1, 2019) (stating that compensation is limited to "losses inherent to the taking itself" and does not include vandalism by third parties during construction even if allowed by negligence of condemnor); *Rover Pipeline, LLC v. 1.23 Acres*, No. 17-cv-10365, 2018 WL 3322995, at *16 (E.D. Mich. July 6, 2018) (excluding evidence of torts committed during construction of pipeline); *State Highway & Transp. Comm'r v. Lanier Farm, Inc.*, 357 S.E. 2d 531, 534 (Va. 1987) (stating illegal acts and tortious conduct are not compensable in condemnation). Landowners agree not to introduce evidence of damages from construction or operation to the extent they arise from negligent or tortious conduct, but they want to introduce evidence that Landowner was blocked from entering or accessing the interior acreage of the property during construction of the pipeline. This evidence is also inadmissible. *See 0.07 Acre*, 2019 WL 2527571, at *11 (discussing *Ryan v. Davis*, 109 S.E. 2d 409 (Va. 1959), where an instruction to "disregard evidence of annoyance, inconvenience, or loss of business caused by dirt, noise or temporary obstruction of access caused by the actual carrying on of the construction work" was found to be "proper").

For these reasons, MVP's motion in limine will be granted in part and denied in part.

**E. Landowners' Motion to Exclude Testimony of Samuel B. Long and Jared Schweitzer**

Landowners move to exclude testimony from Long and Schweitzer regarding tax-assessed values, purchase price of the land, local market participants, and a damage study prepared by the Myers & Woods Appraisal Group in December 2016. At the hearing, Landowners withdrew these motions except for the Myers & Woods study.

The Myers and Woods study used the paired-sales method of analysis. Landowners argue that the paired sales are not sufficiently comparable, but as discussed above, this challenge goes to weight, not admissibility.

17

Landowners argue that Long and Schweitzer should not be permitted to adopt the conclusions in the Myers and Woods study "uncritically" without any analysis as to its applicability or validity. The study was not uncritically adopted. Schweitzer is familiar with Woods' appraisal work, reviewed the study, and determined that it is reliable and the type of facts and data reasonably relied upon by experts in the appraisal field. Fed. R. Evid. 703; *Uniform Standards of Professional Appraisal Practice*, Comment to Standards Rule 2-3 at 25 (2018–2019).

Finally, Landowners argue that the Myers and Woods study is impermissible hearsay. Under Rule 703, otherwise inadmissible evidence considered by an expert can be disclosed to a jury if its probative value in helping the jury evaluate the expert's opinion substantially outweighs any prejudicial effect.

Therefore, Landowners' motion to exclude Long and Schweitzer's testimony pertaining to the Myers and Woods study will be denied.

## F. Landowners' Omnibus Motion

As noted above, the parties reached an agreement regarding MVP's introduction of impact studies,[4] MVP conceded that it would not be introducing evidence of tax-assessed value and market perception, and Landowners withdrew their challenge to prior purchase price evidence. The remaining motions are addressed below.

**1. Evidence of statistical probability of a rupture**

MVP seeks to introduce this evidence as rebuttal to Noble's testimony. Because the court will exclude Noble's testimony on HCAs and PIR, this motion will be denied as moot.

---

[4] Specifically, the parties agreed that such evidence would be admissible if it met the requirements of Rule 803(18) (Statements in Learned Treatises, Periodicals, or Pamphlets).

18

## 2. Photographic evidence of reclamation efforts by MVP on other parcels

Landowners argue that MVP's proposed photographic presentation of what the subject property is intended to look like after reclamation of the easements is speculative, and the danger of unfair prejudice outweighs the potential probative value. Such a presentation assumes, for example, that the properties in the photographs have the same topography, soil type, soil compaction, and other factors unique to the subject parcel. MVP responds that reclamation not being completed before trial does not make the photographs irrelevant, and the fact that the photographs are of other parcels in the MVP project is no reason to exclude them. *See Reed v. Tiffin Motor Homes, Inc.*, 697 F.2d 1192, 1199 (4th Cir. 1982) (holding that trial court was within its discretion in admitting photographs of objects and conditions that were similar to those at issue in the case at bar). The court will deny this motion, but may revisit the ruling at trial to determine if the photographs are of a similar nature.

## 3. Evidence of the impact or non-impact of gas distribution pipelines on other properties

Landowners object to the introduction of evidence of the existence of gas distribution pipelines present on other properties to show the routine presence of distribution pipelines (and related easements) on residential parcels. In response, MVP states that it will not seek to introduce evidence about the routine use of gas distribution pipelines unless Landowners are permitted to introduce evidence of accidents involving other pipelines or evidence of fear or stigma associated with pipelines. Because the court excluded this type of evidence from being introduced through Noble, this motion will be denied as moot.

## II. CONCLUSION

For the reasons discussed herein:

1. Landowners' Motion in Limine (Dkt. No. 16) is DENIED;

2. Landowners' Motion to Exclude Testimony of Samuel B. Long and Jared L. Schweitzer (Dkt. No. 17) is DENIED;

3. MVP's Motion to Exclude Testimony of L. Steven Noble (Dkt. No. 19) is GRANTED IN PART and DENIED IN PART;

4. MVP's Motion to Exclude Testimony of John Garrett Baker (Dkt. No. 21) is GRANTED with respect to expert testimony on value; and

5. MVP's Motion in Limine (Dkt. No. 22) is GRANTED IN PART and DENIED IN PART.

Entered: September 11, 2019.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge